**Charles W. BRINKLEY, Appellant,**

v.

**Eugene S. LEFEVRE, Appellee.**

**No. 740, Docket 79-2179.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 5, 1980.

Decided Feb. 11, 1980.

Opinion April 8, 1980.

---

Ronnie Menor, Student Counsel, Georgetown University Law Center, Washington, D. C. (Michael E. Geltner, Georgetown University Law Center, Appellate Litigation Clinic, Washington, D. C., of counsel), for appellant.

Richard A. Finkel, Asst. Dist. Atty., Brooklyn, N. Y. (Eugene Gold, Dist. Atty. of Kings County, Brooklyn, N. Y., of counsel), for appellee.

Before WATERMAN and MANSFIELD, Circuit Judges and WEINSTEIN, District Judge.*

PER CURIAM:

Charles W. Brinkley, a state prisoner convicted on August 5, 1975, by the Supreme Court of the State of New York, County of Kings, of felony murder, N.Y.Penal Law § 125.25[3], Laws of 1965, as amended 1967, appeals from an order of the District Court for the Eastern District of New York entered by Judge Thomas C. Platt on July 25, 1979, denying without hearing his petition for a writ of habeas corpus seeking his release on the ground that the State deprived him of due process because of (1) insufficiency of evidence to support his conviction, and (2) denial of effective assistance of counsel at his state trial. The petition was based on the undisputed record of the state court proceedings and it is not contended that a hearing before the district court was required to receive any additional evidence.

■ The record reveals both claims to be meritless. The proof of Brinkley's guilt of felony murder, as the Appellate Division, Second Judicial Department, of the State of New York, unanimously found, was overwhelming. See 57 A.D.2d 964, 395 N.Y.S.2d 68 (2d Dept. 1977). A witness testified to seeing two black persons break into a 1972 brown Buick Electra 225 in which the victim was located, grab him by the throat, and take him to a point close to where the victim's body was later found. Brinkley, later the same day, was stopped by the police as he, with co-defendant Murray, was in a car fitting the description of that seen by the witness and, when asked for the registration, turned over papers of the victim, claiming the victim was his uncle. Brinkley the next day admitted to a witness that he and Murray had stolen the car, beaten up and killed the victim, from whom they had taken $10 and some whiskey. Bloodstains were found in the car and on the clothing of the two defendants.

Under the test laid down by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979), upon the record evidence a rational trier of the fact could clearly have found guilt beyond a reasonable doubt; indeed it would be difficult not to do so.

■ Turning to appellant's Sixth Amendment claim of inadequate representation, although his counsel had not spent much time with him prior to the case being called for trial, the trial was postponed 5 days to enable counsel to prepare and there is no showing he did not do so during that period. Infrequency of visitation is not alone enough to demonstrate ineffectiveness of counsel. *United States ex rel. Testamark v. Vincent*, 496 F.2d 641, 643 (2d Cir. 1974), *cert. denied*, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975). The failure of petitioner's attorney to cross-examine more vigorously the witness Leslie Haile who testified to his admissions does not show ineffectiveness here. The witness had

* Of the United States District Court for the Eastern District of New York, sitting by designation.

been fully cross-examined by counsel for the co-defendant Murray with respect to the conversations between the three in which the involvement of Brinkley in the murder was discussed. There was no incompetence under these circumstances in relying on co-counsel's presentation. *United States v. Williams*, 575 F.2d 388, 393 (2d Cir.), *cert. denied*, 439 U.S. 842, 99 S.Ct. 134, 58 L.Ed.2d 141 (1978). Moreover, a fishing expedition with such an incriminating witness was hardly advisable. Nor was it a sign of incompetency not to object to the admissibility of admissions made by co-defendant Murray to the witness Leslie Haile in Brinkley's presence, especially since Brinkley had in the same conversation admitted stealing the car and beating the victim. Since the failure to give a *Bruton*-type instruction regarding Murray's admissions would be harmless error, the failure to request it was hardly ineffective assistance.

On this record it is therefore unnecessary for us to review this Circuit's "shock the conscience—farce and mockery of justice" standard for determining whether there was a denial of effective assistance of counsel, since it is clear beyond any doubt that not only under that test but under the standards adopted by other Circuits (e. g., reasonably effective assistance) there was no violation of appellant's Sixth Amendment rights. See *Indiviglio v. United States*, 612 F.2d 624, 632 (2d Cir. 1979), and *Bellavia v. Fogg*, 613 F.2d 369 (2d Cir. 1979), for a list of decisions discussing these standards.

The order is affirmed.

WEINSTEIN, District Judge (Dissenting):

On the day his client was to face trial for murder in the first degree counsel had not spoken to the defendant "other than five minutes at a time over the last three months" (Record p. 37) and he had "not reviewed the Charles Brinkley files in excess of three months" (*Id.* at 36). An adjournment was sought by defense counsel not to permit him to prepare more adequately, but because he had been forced to neglect his other professional business during a series of arduous trials and, as he put it, an immediate trial of defendant "is a physical and economic hardship upon me," (*Id.* at 35) and "I have been to my office one day in the last nine days" (*Id.* at 38). The court relented and agreed to hold a *Huntley* hearing at 10:00 A.M. on the next day, a Thursday, and to adjourn the trial at 1:00 P.M. until the following Monday at 10:00. The record is silent on how much, if any, of the three and one-half day respite was spent in preparing this case and how much on counsel's necessary recuperation and attention to other professional commitments.

While the probability may seem small that any constitutional right to counsel was violated, application of the proper standard might have led the district judge to conduct a more searching inquiry. Litigants are entitled to a determination by a trial court applying the proper rule of law before an appellate court reviews the case.

The Second Circuit test of constitutional adequacy is whether the trial lawyer's activity was "of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." *Twitty v. Smith*, 614 F.2d 325 (2d Cir. 1979), *quoting United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). *But cf. Rickenbacker v. Warden*, 550 F.2d 62 (2d Cir. 1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977) (modification of the test not necessary because the alleged deficiencies did not amount to ineffectiveness even under the standard of "reasonable competency.").

The farce and mockery standard has been rejected in all other circuits in favor of a requirement that counsel for the defense act in a reasonably competent and skillful professional manner: *see, e. g.*, District of Columbia: *United States v. De Coster*, 487 F.2d 1197 (D.C.Cir.1973); First Circuit: *United States v. Bosch*, 584 F.2d 1113 (1st Cir. 1978); Third Circuit: *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970); Fourth Circuit: *Coles v. Peyton*, 389 F.2d 224 (4th

Cir. 1968), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120; Fifth Circuit: *MacKenna v. Ellis,* 280 F.2d 592 (5th Cir. 1960), *modified,* 289 F.2d 928 (5th Cir. 1961), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78; Sixth Circuit: *Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974); Seventh Circuit: *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir. 1975) ("goes beyond" sham or mockery standard by requiring the "expected professional standard of competent counsel"); Eighth Circuit: *United States v. Easter,* 539 F.2d 663, 666 (8th Cir. 1976) ("customary skills and diligence that a reasonably competent attorney would perform under similar circumstances" required under mockery test); Ninth Circuit: *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); Tenth Circuit: *Dyer v. Crisp,* 613 F.2d 275 (10th Cir. 1980); in the most recent better reasoned state decisions: *see, e. g., People v. Pope,* 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859 (1979); *Fernandez v. United States,* 375 A.2d 484 (D.C. 1977); *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975); *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878 (1974); *Risher v. State,* 523 P.2d 421 (Alaska 1974); *State v. Thomas,* 203 S.E.2d 445 (W.Va.1974); *State v. Harper,* 57 Wis.2d 543, 205 N.W.2d 1 (1973); and by the commentators: *see, e. g.,* Kadish and Paulsen, Criminal Law and Its Process 806–816 (3d ed. 1975), *id.* 178–201 (1979 Supp.); Kamisar, LaFave and Israel, Modern Criminal Procedure 60–61 (4th ed. 1974), *id.* 16–18 (1979 Supp.); Bazelon, The Defective Assistance of Counsel, 42 U.Cinn. L.Rev. 1, 28 (1973) (the mockery of justice test "requires such a minimal level of performance from counsel that it is itself a mockery of the Sixth Amendment."); Finer, Ineffective Assistance of Counsel, 59 Cornell L.Rev. 1077 (1973); Tague, The Attempt to Improve Criminal Defense Representation, 15 Am.Crim.L.Rev. 109 (1977); Stone, Ineffective Assistance of Counsel and Post-Conviction Relief in Criminal Cases, 7 Colum.Human Rights L.Rev. 427 (1975); Note, Identifying and Remedying Ineffective Assistance of Criminal Defense Counsel: A New Look After *United States v. DeCoster,* 93 Harv.L.Rev. 752 (1980).

The Second Circuit's test demeans the Sixth Amendment's guarantee of meaningful counsel, the guarantee of equality before the law embodied in Article III and the Fifth and Fourteenth Amendments to the Constitution, and the fundamental credo of the American Republic announced in our Declaration of Independence—"All Men are Created Equal." It is a standard that falls far below this Circuit's steady insistence on the realities of fundamental fairness and due process. Surely the state bars of Connecticut, New York and Vermont are no less capable than the rest of the American legal profession; this court does not compliment them by assigning a standard of competence in criminal cases each member of the court would indignantly reject were it to be used to test his or her own professional work.

Based upon extensive studies indicating dissatisfaction by federal judges with the inadequate representation in some cases, the Second Circuit Council has recently recommended that the district courts take steps to ensure against miscarriages of justice because of poor preparation and courtroom performance by lawyers. *See* Second Circuit 1979 Annual Report, pp. 20–21. Are the judges of this court confident that the level of representation in all state criminal trials is satisfactory? Are they satisfied that the articulation of a proper constitutional standard would not give greater assurance of a more effective criminal justice system?

There is a compelling need to inform the bench and bar of an effective representation requirement compatible with the Second Circuit's other due process standards. This case should be remanded so the trial judge can apply the proper test.