44

Edgar QUINONES, Petitioner–
Appellant,

v.

David L. MILLER, Superintendent,
Eastern Correctional Facility,
Respondent–Appellee.

No. 05–3719–pr.

United States Court of Appeals,
Second Circuit.

March 22, 2007.

Robin C. Smith, Brooklyn, NY, for Petitioner–Appellant.

Susan Axelrod, Assistant District Attorney (Mark Dwyer, Assistant District Attorney, of counsel; Robert M. Morgenthau, District Attorney for New York County, on the brief), New York, NY, for Respondent–Appellee.

PRESENT: Hon. THOMAS J. MESKILL, Hon. RALPH K. WINTER, and Hon. CHESTER J. STRAUB, Circuit Judges.

## SUMMARY ORDER

Petitioner–Appellant Edgar Quinones appeals from the March 31, 2005 judgment of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge)*, denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. We assume the parties' familiarity with the facts and procedural history of this case. For the reasons that follow, we affirm.

"We review a district court's denial of a habeas petition *de novo,* but we are bound to accept the district court's factual findings save for clear error." *Anderson v. Miller,* 346 F.3d 315, 324 (2d Cir.2003). Furthermore, because Quinones's claims were presented to the state courts and adjudicated on the merits, we may issue the writ only if the state courts' resolution of the claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000). This deferential standard applies even where the state court decision "does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001).

Quinones first argues that his state-court conviction must be vacated because his trial counsel, Alvin C. Morris, was impaired by an actual conflict of interest. Where a Sixth Amendment right to counsel exists, "there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). To establish a violation of this right, a habeas petitioner must "demonstrate[ ] that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). If the above showing is made, prejudice is presumed. *Id.*

Quinones was convicted in 1995, following jury trial, of murder in the second degree and criminal possession of a weapon in the second and third degrees, for the shooting death of Lamont Carter. Quinones asserts that Morris's loyalties were divided because approximately eleven months before appearing on his behalf, Morris represented his brother, Dennis Quinones, at an arraignment following Dennis's arrest for criminal possession of a .380 caliber gun. Ballistics tests conducted in connection with these habeas proceedings have established that the gun found in Dennis's possession was the weapon used in Carter's murder.

These test results, without more, are insufficient to establish that Morris actively represented conflicting interests, i.e., that Morris's and petitioner's interests actually " 'diverge[d] with respect to a material factual or legal issue or to a course of action.' " *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993) (quoting *Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. 1708). Fatal to

petitioner's claim is the absence of any evidence that Morris knew of, or even suspected, the factual link between the two cases when he defended petitioner. Morris's representation of Dennis Quinones was transient and insubstantial: Dennis absconded following his arraignment, and he was not apprehended until two years after petitioner was convicted and some time after Morris's death. Petitioner asserts that his brother must have confessed to Morris that he, not petitioner, was the real murderer. This contention is purely speculative, and given the brief time Morris had with Dennis Quinones, fairly improbable. *See Perillo v. Johnson,* 205 F.3d 775, 799 (5th Cir.2000); *Salam v. Lockhart,* 874 F.2d 525, 528 (8th Cir.1989).

█ All that the record substantiates is that Morris knew that the brothers had been charged with criminal possession of the same type of gun. It is a far leap from this fact to the conclusion that the same gun was involved in both charges, and an even further leap to petitioner's contention that Dennis must have had the gun the entire time and therefore must have committed the murder. Given the eyewitness identifications placing petitioner at the scene, Morris had no reason to believe that Dennis was a plausible suspect in the Carter murder. We further note that petitioner has never presented any photographs or affidavits to show that he and Dennis shared a close family resemblance, despite having multiple opportunities to do so. On this record, we cannot find that

the state court's rejection of Quinones's actual conflict of interest claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Freund v. Butterworth,* 165 F.3d 839, 859 (11th Cir.1999) (en banc); *Enoch v. Gramley,* 70 F.3d 1490, 1496, 1498 (7th Cir.1995); *Mannhalt v. Reed,* 847 F.2d 576, 580 (9th Cir.1988).

Quinones next argues that his conviction must be vacated because he was deprived of his right to effective assistance of counsel under *Strickland.*[1] To make out a claim of ineffective assistance, a petitioner must demonstrate both that "counsel's representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052. Where, as here, the state court has rejected the claim on the merits, a petitioner must do more than "convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly"; in order to prevail, "he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Cox v. Donnelly,* 387 F.3d 193, 197 (2d Cir.2004) (quoting *Bell v. Cone,* 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (alteration in original)).

Quinones contends that Morris rendered ineffective assistance by: (1) failing to ob-

---

1. It is unclear from the District Court's order whether its grant of a certificate of appealability was limited to the actual conflict claim, or whether it encompassed the *Strickland* claim as well. Respondent does not contest petitioner's contention that the COA covered both claims. To the extent that there is any doubt, we may construe petitioner's filing of a notice of appeal as a request for a COA on all

issues raised in the appeal. *Cotto v. Herbert,* 331 F.3d 217, 236 (2d Cir.2003). Because Quinones has shown that reasonable "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," *id.* at 237 (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)), we hereby amend the COA to include the *Strickland* claim.

ject to improper testimony; (2) failing to object to the trial court's erroneous marshaling of the evidence; (3) mischaracterizing the exchange between Quinones and Carter as an "argument" on summation; (4) failing to suppress the pretrial identifications on the ground that the procedures were unfairly suggestive; and (5) failing to object to police testimony about the lineup identification made by the key eyewitness, Carol Deans, although the prosecutor did not lay a proper foundation for such testimony.[2]

■ The Appellate Division determined that Quinones "received meaningful representation," and that "[c]ounsel's alleged deficiencies did not deprive [him] of a fair trial." *People v. Quinones*, 272 A.D.2d 228, 229, 708 N.Y.S.2d 616 (1st Dep't 2000), *leave to appeal denied*, 95 N.Y.2d 870, 715 N.Y.S.2d 224, 738 N.E.2d 372 (2000). We cannot say that the Appellate Division, in reaching its conclusion, applied *Strickland* in an objectively unreasonable manner. First, although the record bears out Quinones's contention that Morris did not object to some improper testimony, Quinones has failed to overcome the strong presumption that "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. For instance, Quinones complains that Morris failed to object when Officer John Ramos, in response to an open-ended question by the prosecutor about what he did upon arriving at the crime scene, testified that he heard a woman in the crowd yell out, "The Puerto Rican did it." However, Morris could have determined that since the

jury had already heard the statement, raising an objection after the fact and moving to strike the testimony would be ineffectual. Morris instead let the testimony stand and used it to undermine Officer Ramos's credibility, eliciting on cross-examination that Officer Ramos had not included the incident in his notes and had made little or no effort to identify the alleged witness. It is evident from this cross-examination that Morris's decision not to object to the hearsay testimony was a strategic choice, and not the result of mere negligence or incompetence. *See Greiner v. Wells*, 417 F.3d 305, 320 (2d Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1363, 164 L.Ed.2d 72 (2006).

■ Quinones also faults Morris for not objecting to Detective George Milian's testimony that he sought Quinones for a lineup after speaking with two witnesses and the other detectives, and that Quinones was eventually arrested by members of the "Career Criminal Apprehension Unit." The Appellate Division's rejection of these arguments was not objectively unreasonable. Morris could have believed, not unreasonably, that Detective Milian's account of his investigation was admissible as a narrative of the events leading up to the lineup, and did not constitute inferential bolstering because Detective Milian did not reveal any particulars of his conversations with the witnesses. *See People v. Vanier*, 255 A.D.2d 610, 610, 680 N.Y.S.2d 877, 877–78 (2d Dep't 1998); *People v. Shaw*, 232 A.D.2d 174, 175, 647 N.Y.S.2d 751, 752 (1st Dep't 1996). Furthermore, because Detective Milian testified that he also spoke with several other detectives, and because both

---

**2.** In his brief to this Court, Quinones identifies a number of other alleged defects in Morris's performance. Because Quinones did not present these particular factual bases of his *Strickland* claim to the Appellate Division,

and because he has not demonstrated cause or prejudice for excusing the procedural default, we do not consider these additional allegations. *See Ramirez v. Attorney Gen. of N.Y.*, 280 F.3d 87, 96 (2d Cir.2001).

of the witnesses mentioned testified at trial and were subject to cross-examination, Quinones's right of confrontation was not implicated. *See People v. McClain,* 176 A.D.2d 521, 522, 574 N.Y.S.2d 712, 712 (1st Dep't 1991); *cf. Mason v. Scully,* 16 F.3d 38, 42–44 (2d Cir.1994). Any mistake in failing to object was harmless error, and did not amount to ineffective assistance. *See Brinkley v. Lefevre,* 621 F.2d 45, 47 (2d Cir.1980).

As for the brief reference to the "Career Criminal Apprehension Unit," Morris could have made a strategic decision not to object, believing that an objection would only serve to highlight the statement to the jury. *See Buehl v. Vaughn,* 166 F.3d 163, 176 (3d Cir.1999); *see also United States v. Grunberger,* 431 F.2d 1062, 1069 (2d Cir.1970). Indeed, following Detective Milian's testimony, and outside the presence of the jury, Morris sought an order from the court barring the remaining detectives from mentioning the name of the unit on the stand. This fact indicates that Morris's silence during Detective Milian's testimony was conscious and tactical.

■ Second, Morris did not render ineffective assistance by not objecting to the trial court's marshaling of the evidence in its oral charge to the jury. Quinones asserts that Morris should have objected to the court's description of the decedent's girlfriend, Marion Scarlett, as having testified that Quinones was having "some kind of dispute or agitated discussion" with Carter "within minutes" of the shooting, and its characterization of the lineup identification as having occurred "shortly after" the commission of the crimes charged. The court's description of Scarlett's testimony was not inaccurate: Scarlett testified that Quinones was talking to Carter, that Quinones got "agitated" when she interrupted their discussion, and that "[a]bout five or ten minutes" after she saw them last, she heard the gunshots. Morris's decision not to object was therefore not in error. The court's statement regarding the lineup, on the other hand, *was* inaccurate. Under the circumstances, however, we cannot say that Morris's failure to object fell "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. This is because immediately before using the phrase "shortly after," the trial court explicitly stated that the crimes were committed on December 31, 1992, and that the lineup identification took place on August 20, 1993. Morris also cleared up any confusion by securing a supplemental charge that reminded the jury that the lineup occurred on August 20, 1993, "eight months after the event."

■ Third, Morris had a reasonable justification for conceding, in his closing statement, that Quinones's exchange with Carter may have been an "argument." Scarlett testified that when she interrupted Quinones's discussion with Carter, Quinones became "agitated" and said to Carter, "Yo, I'm talking to you, man." Scarlett further testified that when she heard this, she "stepped backwards a couple of steps" while "still looking at" Quinones, because "[i]t was unusual to see somebody act that way." Although Scarlett did not specifically use the word "argument," based on her testimony, Morris legitimately could have believed that if he tried to characterize the exchange as a normal discussion—and Quinones's reaction to the interruption as ordinary annoyance—he might lose his believability with the jury. Morris's decision to call the exchange an "argument" and emphasize that no threats of

violence were made was not objectively unreasonable.

■ Fourth, our examination of the record leads us to conclude that Morris's performance at the pretrial *Wade* hearing was not constitutionally ineffective. Quinones contends that Morris should have sought to suppress the identification procedures as unduly suggestive because Deans was shown his picture in two photo arrays prior to the lineup, the second time just five hours before the lineup, and also because Quinones was placed in the same position on all three occasions. Although Morris did not argue these points at the *Wade* hearing, his conduct was not professionally incompetent because these arguments lack merit. A lineup identification is not rendered impermissibly suggestive simply because a witness is shown pictures of the defendant, and identifies the defendant, in photo arrays prior to the lineup. *See People v. Bowers*, 128 A.D.2d 541, 541, 512 N.Y.S.2d 473, 474 (2d Dep't 1987); *People v. Carter*, 106 A.D.2d 654, 656–57, 482 N.Y.S.2d 911, 914 (2d Dep't 1984). While New York courts have recognized "that the danger of misidentification will be increased if the police show a witness pictures of several persons among which the photograph of a single individual resembling the perpetrator recurs," *People v. Malphurs*, 111 A.D.2d 266, 268, 489 N.Y.S.2d 102, 105 (2d Dep't 1985), here the trial court found that Deans was shown the same photo array twice, so Quinones was not the only person who was featured in both arrays or the only one placed in the same position. Although the police perhaps should not have conducted the lineup so soon after the second photo array, *cf. People v. Allah*, 158 A.D.2d 605, 606, 551 N.Y.S.2d 577, 578 (2d Dep't 1990), because the prior photo procedures were not suggestive, it is unlikely that the lineup identification was tainted. *See Sales v. Harris*,

675 F.2d 532, 538 (2d Cir.1982); *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 550–51 (E.D.N.Y.1999). In any case, given Deans's relatively confident identification of Quinones in the first photo array and her strong reactions at the lineup, the identification evidence met the minimum threshold of reliability. *See Sales*, 675 F.2d at 539 (in the absence of "a very substantial likelihood of irreparable misidentification," identification evidence is to be weighed by the jury). Morris's decision not to seek suppression of the identification evidence was not ineffective.

■ Finally, Quinones contends that Morris's representation was constitutionally deficient in that he raised no objection to Detective Milian's testimony about Deans's lineup identification, despite the fact that the prosecutor failed to lay the requisite foundation for that testimony. Under New York law, third-party testimony recounting a witness's pretrial identification is inadmissible unless that witness testifies to, *inter alia*, "being 'unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question.'" *People v. Patterson*, 93 N.Y.2d 80, 82, 688 N.Y.S.2d 101, 103, 710 N.E.2d 665, 667 (1999) (quoting N.Y. CRIM. PROC. LAW § 60.25(1)(a)). This requirement is met "where the witness, due to lapse of time or change in appearance of the defendant, cannot make an in-court identification, but has on a previous occasion identified the defendant." *People v. Nival*, 33 N.Y.2d 391, 395, 353 N.Y.S.2d 409, 411–12, 308 N.E.2d 883, 885 (1974). It is not satisfied, however, where a witness refuses to make an in-court identification out of fear. *People v. Bayron*, 66 N.Y.2d 77, 82, 495 N.Y.S.2d 24, 26, 485 N.E.2d 231, 233 (1985). Consequently, in order to lay a proper founda-

tion under Criminal Procedure Law § 60.25, the prosecutor must elicit testimony from the witness that "establish[es] a lack of present recollection as a basis for the lack of identification and not a fear of identifying the defendant." *People v. Quevas*, 81 N.Y.2d 41, 45, 595 N.Y.S.2d 721, 723, 611 N.E.2d 760, 762 (1993).

Deans testified that she could not identify the perpetrator in court, but the prosecutor failed to ask any follow-up questions to elucidate the reason for her inability to make an in-court identification. Nevertheless, we cannot conclude that the Appellate Division's rejection of this argument was objectively unreasonable, given that some New York appellate courts have held that even "where the cause of a witness's inability to make a trial identification is unexplained or the testimony which bears upon this issue is vague, nonparticularized, and conclusory in content," the admission of third-person testimony concerning a pretrial identification is not error if the trial court could have inferred, based on the record as a whole, that the witness's inability was due to the lapse of time or change in appearance of the defendant since the prior identification, and not a fear of retribution. *People v. Hernandez*, 154 A.D.2d 197, 201, 552 N.Y.S.2d 649, 652–53 (2d Dep't 1990); *see also People v. Fermin*, 272 A.D.2d 247, 247, 709 N.Y.S.2d 397, 397 (1st Dep't 2000). Deans's lineup identification occurred in August 1993, and she did not testify until June 1995. The trial court could have inferred from this long passage of time that Deans's inability to make an in-court identification was due to a lapse in memory.

Even assuming, however, that Morris's failure to object fell below the "prevailing professional norms," *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052 the Appellate Divi-

sion could reasonably have concluded that this error was not prejudicial. As respondent argues, had Morris raised the objection, the prosecutor could easily have elicited from Deans that her recollection was not as clear as it was at the time of the crime, *see People v. Ortiz*, 253 A.D.2d 710, 711, 680 N.Y.S.2d 192, 193 (1st Dep't 1998), or that she was "not sure now" whether Quinones was the perpetrator, *see People v. Victor*, 271 A.D.2d 556, 557, 705 N.Y.S.2d 659, 659 (2d Dep't 2000).

In sum, while Morris may have made some mistakes, Quinones has failed to demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Quinones has also failed to establish that counsel's conduct, as a whole, "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. Because the state court's rejection of the ineffectiveness claim was neither contrary to, nor an objectively unreasonable application of, *Strickland*, we affirm the denial of Quinones's habeas petition on this ground.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.