UNITED STATES of America ex rel. John TSIRIZOTAKIS, a/k/a John Alaska, Petitioner,

v.

Eugene LEFEVRE, Superintendent, Clinton Correctional Facility, John J. Santucci, District Attorney, Queens County; Robert Abrams, Attorney General of the State of New York, Respondents.

No. CV–81–0052.

United States District Court, E. D. New York.

March 17, 1981.

Julia Pamela Heit, New York City, for petitioner.

John J. Santucci, Queens County Dist. Atty., by Barry A. Schwartz, Asst. Dist. Atty., Kew Gardens, N. Y., for respondents.

WEINSTEIN, Chief Judge:

Petitioner was convicted after a jury trial on June 20, 1974 of murder in the second degree. He was sentenced to an indeterminate term of not less than twenty years nor

more than his natural life. The Appellate Division affirmed and leave to appeal to the Court of Appeals was denied.

He maintains that the trial judge's charges on intent and justification impermissibly shifted the burden of proof to the defendant. Since justification and intent were the only issues contested at trial, petitioner alleges that his right to a fair trial under the due process clause of the Fourteenth Amendment was violated.

## FACTS

The testimony revealed that the petitioner had been in a car with five others, including the deceased, at the time of the shooting. Three of the passengers testified for the prosecution at the trial. One witness testified that while he did not see the shooting, he heard an angry discourse before the killing and saw the gun in petitioner's hands afterwards. This witness stated he heard petitioner say "Forget about what you saw." Transcript at 105. The two other witnesses who were in the car testified that they heard the petitioner say "I killed him before he killed me." Transcript at 191–192. The third witness testified that he also heard the petitioner state "You know why I did it? Because he kidnapped Vogiatzis' (the driver's) little girl and he wanted money for that." Transcript at 255.

According to still another witness, petitioner later said, "Yes, I killed him because he killed my brother in Greece." Transcript at 462–467. Additional corroborative evidence offered by the prosecution consisted of the testimony of an acquaintance of the petitioner and the deceased. This witness stated that the petitioner admitted killing the deceased because he did not want them to be friends. Transcript at 524.

The defense consisted of testimony by the petitioner in which he stated that his actions were justified because he feared for his own life and the lives of others in the car. Transcript at 568. He denied making statements in which he admitted killing the deceased. Transcript at 586–587. Both sides offered conflicting evidence as to whether the abrasions on the body of the deceased were caused by fingernails indicating a struggle, Transcript at 617, 620, or by the deceased being pulled across a rough surface after he was dead. Transcript at 27, 31.

## CHARGE ON INTENT

■ When a trial judge's charge may be interpreted as creating a mandatory presumption that a person intends what he actually does there is an unconstitutional shifting of the burden of proof when intent is an element of the crime charged. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *Getch v. Hammock*, No. CV–80–3633 (E.D.N.Y. filed March 3, 1981). The charge in *Sandstrom*, "The law presumes that a person intends the ordinary consequences of his voluntary acts," is similar to a portion of the intent charge in petitioner's trial, although the intent charge in question was prefaced by this general statement:

All that the People are required to prove beyond a reasonable doubt is that the defendant formed an intent to kill a human being and, pursuant to that intent, unlawfully caused the death of that person.

Transcript at 734.

■ The complete intent charge stated: When I mention the word 'intent' throughout my charge when appropriate, I mean criminal intent. The law defines the term intentionally as follows, and again, I quote: 'A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.' That's the end of the quote. I again bring to your mind that intent to kill is a necessary element of the crime of murder under this section of the law. You will understand that the intent with which a person commits an act or a crime is seldom, if ever, put into words by that person before the commission of the act. Crimes are ordinarily secret. A person does not advertise or say beforehand

what he intends to do, *and so the law says that a person is presumed to intend what he actually does.* So, I charge you that intent is a secret, silent operation of one's mind and the mental purpose to do a particular act or to achieve a definite result. From the very nature of things, it may be difficult to ascertain what goes on in a person's mind except by what he says or what he does. We cannot look into a person's mind. Intent is a mental operation, as a rule, known only to the person himself, and the only possible way for human judgment to ascertain or determine the mental operation on the question of intent is by the declaration or acts of the defendant and the reasonable, rational and the fair inferences from these declarations or acts of the defendant and the reasonable rational and the fair inferences from these declarations or acts. So that a person's intent, as a rule, can be proved only by what he says or what he does and the circumstances surrounding the act in question; *in other words, a person's intention is the natural and reasonable and probable consequences of his acts.* That intent may be proved by direct evidence or it may be proved from all the circumstances of the case or it may be proved by a combination of both.

Transcript at 734–736, emphasis added.

The charge in *Sandstrom* was more devastating to the defendant there since he maintained that he lacked the purpose or knowledge to intend. By contrast, the petitioner in effect conceded that he acted with the requisite intent by alleging that he acted with justification since the life of another was threatened. The critical issue was not whether he had the intent to kill the deceased but whether his actions were justified. Even if the jury felt compelled to find that the defendant intended what he did this would not have affected its determination of whether or not he had acted justifiably.

The intent charge in question was preceded by a general charge which specifically stated that

. . . no duty rests on the defendant to prove his innocence. On the contrary, the burden of proof rests upon the prosecution to establish and prove the guilt of the defendant beyond a reasonable doubt.

Transcript at 718. The petitioner was not prejudiced by the intent charge when it is viewed in the context of the entire charge and the circumstances of the case.

## CHARGE ON JUSTIFICATION

 The petitioner's second contention that the trial judge's charge to the jury on the issue of justification violated his constitutional rights by impermissibly shifting the burden of proof of the justification defense is more serious.

New York requires the prosecution to prove the death, the intent to kill, and causation as the elements of murder in the second degree. *Patterson v. New York*, 432 U.S. 197, 205–206, 97 S.Ct. 2319, 2324, 53 L.Ed. 281 (1977). N.Y.Penal Law § 125.25 (McKinney 1975). Under the statutory scheme justification is a defense which must be disproven by the prosecution beyond a reasonable doubt once it is interposed by the defendant. *People v. Steele*, 26 N.Y.2d 526, 311 N.Y.S.2d 889, 260 N.E.2d 527 (Ct. of App.1970).

Petitioner contends that the trial judge's charge to the jury on the issue of justification violated his constitutional rights by impermissibly shifting the burden of proof of the justification defense to the petitioner. The trial judge's complete charge read as follows:

Now, the defendant urges that the shooting of the decedent was justified by an emergency. You have heard the conflicting stories told by the witnesses as against the testimony of the defendant, as to what actually happened. Having decided in your own mind what truly occurred, you must then decide whether there was legal justification for the defendant's acts or whether they constitute the crime of murder as charged.

What is meant by 'justification allegedly brought about by an emergency?' The revised Penal Law, in Section 35.05, sub-

division 2, expressly provides that when conduct which would ordinarily be considered an assault and punishable as such, is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, in this case the defendant, and which is of such gravity that, according to the ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute, the conduct is justifiable and not criminal.

Now, let us analyze these words that seem complicated but, in truth, have always been recognized by thinking men and universally approved by them. These words, in effect, state that even an otherwise criminal act—striking, a shooting, jostling, grasping, any other physical contact or encroachment which is normally considered assaultive—is justified if an emergency makes it reasonably necessary or desirable. To be so justified, the act must be necessary as an emergency measure to avoid something which is immediately about to happen but was not brought about by the person who commits the emergency assaultive act. The emergency to be avoided must be serious enough by ordinary standards of intelligence and morality that it would be worse to let it happen than to do the less harmful assaultive act to avoid it. In this connection, it is a duty imposed upon the Court to determine and instruct you whether the claimed circumstances would, if you believe them, be sufficient to constitute an emergency justification. So, *the defendant has been permitted to introduce only evidence which would be legal justification*, provided you accept it and believe it.

You must therefore consider the evidence which has been introduced to justify the homicide charge; these acts are admitted by the defendant, but their unlawfulness is not. You must consider them, as judges of the facts, and decide whether the testimony introduced by the defendant is truthful and believable. *If you believe it, if you are convinced that these acts were done in the manner and for the purpose testified, you must acquit the defendant. If you do not believe them, however, provided still that you are convinced beyond a reasonable doubt that the People have proved that the defendant's acts were intended to harm and complied with all the requirements of murder as I have charged them to you, then you must convict the defendant.*

Transcript at 737-739; emphasis added.

The justification charge did not specifically state that the prosecution had the burden of disproving the defense of justification beyond a reasonable doubt. It might well have misled a jury with respect to which side had the burden of proof and what its level was.

Moreover, this failure was compounded by the suggestion that defendant's evidence was admitted on this point, implying that the people's evidence could not be used to infer justification. This was incorrect; there is no proprietary right to evidence. *People v. Kelly*, 302 N.Y. 512, 518, 99 N.E.2d 552, 554 (1951). Here the evidence introduced by prosecution witnesses, if credited suggested that defendant might have believed himself threatened when he fired the fatal shot.

The charge on justification is troublesome. Defendant was entitled under New York law, and thus under the Constitution, to a clear and precise direction that the state had the burden of proving beyond a reasonable doubt that there was no justification. This is particularly true since justification was the only real issue in the case. In view of the bizarre admissions made by defendant the evidence was less than conclusive on the point.

Nevertheless it appears that the trial judge made some effort to apply the statutory scheme to the circumstances at hand. Since the petitioner's defense consisted almost entirely of his own testimony of how the killing had occurred the practical effect

was that the jury was faced with an all or nothing decision. The ultimate question was the credibility of the petitioner. If the jury believed the petitioner, he was to be acquitted. If not, the prosecution was still required to prove that the petitioner's acts were intended to harm (or to kill as restated at the end of the trial, Transcript, at 747) and complied with all the requirements of murder. The general charge stated the prosecution was required to show that the petitioner *unlawfully* caused the death. Transcript at 734. Emphasis added. It also stated that

> no duty or burden rests on the defendant to prove his innocence. On the contrary, the burden of proof rests upon the prosecution, represented by the District Attorney, to establish and prove the guilt of the defendant beyond a reasonable doubt.

Transcript at 718. Reasonably interpreted the charge under the circumstances of this case does not lead to the firm conclusion that the jury was relieved of its duty to find the defendant guilty beyond a reasonable doubt on all elements, including justification. But we certainly could not conclude beyond a reasonable doubt that the jury was not misled on the point.

Were it not for the procedural issue to which we now turn, the court would grant the writ. The burden of proof on the critical issue was not squarely placed on the state as it should have been.

### PROCEDURAL DEFAULT

█ Petitioner's contention that the instructions to the jury concerning intent were unconstitutional must be denied on procedural grounds as well. Failure to comply with a valid state procedural rule precludes federal habeas corpus relief absent a showing of cause for the procedural default and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

█ No objection to the charge was made at the time of trial. Nor has the petitioner presented this claim to the New York State Appellate Courts. This failure to object and to appeal amounts to a proce-

dural default. *Taylor v. Harris*, 640 F.2d 1 (2d Cir. 1981) (defendant "did not object to this instruction at this state court trial or upon his state court appeal.").

The claim that the *Sandstrom* rule was unknown at the time of trial is not a valid justification for a failure to object. *Sandstrom* has been state law for over a century. *People v. Thomas*, 50 N.Y.2d 467, 472, 429 N.Y.S.2d 584, 587, 407 N.E.2d 430, 433 (1980); *Taylor v. Harris*, 640 F.2d 1 at 2 (2d Cir. 1981). Any error in the charge is not available to the petitioner.

After a full discussion of intent at the side-bar, the court elaborated on its instruction without mentioning burden of proof (Transcript at 747) and defense counsel, in answer to the court's question, "Anything else?", responded, "No." Transcript at 748. Earlier in colloquy counsel for the prosecution had interpreted the charge as requiring proof of intent "beyond a reasonable doubt." Transcript at 743. No suggestion of dissent on this point was made by the defense. *Id.* Had the problem been brought to the court's attention, there appears no reason to suspect that a clarifying proper instruction on burden of proof would not have been given. The court appears to have been misled by defense counsel's acquiescence.

Nor did petitioner specifically object to the justification charge at trial. However, the issue of an alleged improper shifting of the burden of proof without specifically stating a constitutional deprivation was claimed on appeal. Only state cases were cited by the petitioner to support his position. Petitioner is arguably barred from relief on the procedural ground that he has not exhausted his state remedies since the federal claim at bar has not been fairly presented in state court. *Wilson v. Fogg*, 571 F.2d 91, 94 (2d Cir. 1978).

It is not clear whether New York courts would consider the federal constitutional claims in the absence of an objection at the trial. *Compare People v. Bailey*, 21 N.Y.2d 588, 598, 289 N.Y.S.2d 943, 949, 237 N.E.2d 205, 209 (1968) (errors of constitutional

magnitude will be considered on appeal even if not raised at trial level); *People v. McLucas*, 15 N.Y.2d 167, 172, 256 N.Y.S.2d 799, 802, 204 N.E.2d 846, 848 (1965) *with People v. Argibay*, 45 N.Y.2d 45, 50, 407 N.Y.S.2d 664, 666, 379 N.E.2d 191, 192 (1978)). The failure to object does suggest that defense counsel understood the charge on burdens to be accurate and this lends some support to the conclusion that the jury understood that the burden was on the state to negative justification beyond a reasonable doubt. No reason was shown for this failure to object.

The petition is dismissed.

A Certificate of Probable Cause is granted. There is a serious question with respect to denial of petitioner's rights since the jury might have concluded that the burden on intent and justification was impermissibly shifted to defendant. Applying procedural rules to preclude relief in this case seems harsh since defendant may be being severely punished for the failure of his attorney.

So ordered.