**John TSIRIZOTAKIS, a/k/a John Alaska, Petitioner-Appellant,**

v.

**Eugene LeFEVRE, Superintendent, Clinton Correctional Facility, John J. Santucci, District Attorney, Queens County, and Robert Abrams, Attorney General of the State of New York, Respondents-Appellees.**

**No. 814, Docket 83–2289.**

United States Court of Appeals, Second Circuit.

Argued Feb. 17, 1984.

Decided June 11, 1984.

Certiorari Denied Oct. 1, 1984. See 105 S.Ct. 216.

Julia Pamela Heit, New York City, for petitioner-appellant.

Andrew Zwerling, Asst. Dist. Atty., Kew Gardens, N.Y. (John J. Santucci, Dist. Atty., Queens County, Malvina Nathanson, Asst. Dist. Atty., Kew Gardens, N.Y., on the brief), for respondents-appellees.

Before TIMBERS, KEARSE and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner John Tsirizotakis, a New York State prisoner, appeals from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Chief Judge,* denying his petition for a writ of habeas corpus challenging on due process grounds certain aspects of the trial court's charge to the jury, and challenging on Sixth Amendment grounds

the failure of his trial and appellate attorneys to call the alleged defects in the charge to the attention of the state courts. The district court ruled that the due process claims could not be raised in a habeas petition because petitioner had failed to assert them properly in the state proceedings and had not shown cause for the procedural defaults as required by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The court ruled that the performances of petitioner's trial and appellate counsel constituted neither cause for petitioner's failure to raise the due process claims in the state proceedings, nor an independent constitutional violation upon which his habeas petition might be granted. For the reasons below, we affirm.

## I. BACKGROUND

### A. *The Events and the First State Court Proceedings*

Petitioner was convicted in New York Supreme Court in 1974 of second degree murder. The events leading to his conviction were as follows. Petitioner and five other men had been traveling in an automobile in New York; during the journey, petitioner fatally shot one of his companions in the back of the head. These facts were not in dispute; the controversy at trial centered on the reason for the shooting. Three of petitioner's four surviving companions from the fatal car trip were called by the prosecution. Petitioner testified on his own behalf.

None of the companion witnesses had actually seen the shooting, but all testified to statements made by petitioner immediately afterward. The first, Spiros Tsiolis, had been sitting in the middle of the front seat of the car, to the left of the deceased; petitioner had been sitting in the back seat, directly behind the deceased. Tsiolis testified that he had heard an angry dispute between petitioner and the deceased; as he was changing tapes in the car's music system, he heard a shot. He then saw a gun in petitioner's hand and heard petitioner say, "Forget about what you saw." The

second witness, John Vogiatzis, the driver of the car, testified that after he heard the shot, he asked what had happened, and petitioner said, "I killed him before he killed me." Vogiatzis noticed that the car's windshield had been smashed. The third passenger witness testified that after hearing the shot, he asked petitioner if he had killed the deceased, and petitioner first said, "I kill[ed] him because he was going to kill me," and then stated, "You know why I did it? Because he kidnapped Vogiatzis' little girl and he wanted money for that." The prosecution also called, *inter alios*, two other acquaintances of petitioner who testified to statements made by petitioner to them sometime after the shooting. One testified that petitioner told him, "Yes, I killed [the deceased] because he killed my brother in Greece." The other testified to petitioner's statement that he had had words with the deceased and that petitioner had drawn his gun and killed the deceased.

Petitioner, on the other hand, testified that he had shot the deceased because he feared for his own life and the lives of the other men in the car. He stated that in the course of a heated discussion the deceased had drawn a gun and put it to the head of Tsiolis; that petitioner had grabbed the deceased's hand and face and had pulled his arm and head back in an attempt to make him drop the gun; and that the gun had discharged, shooting the deceased through the head. Petitioner denied having told anyone that he killed the deceased. Petitioner and the prosecution presented conflicting expert testimony about whether abrasions on the deceased's face had been caused by a struggle such as that described by petitioner, or by dragging the body across a rough surface.

In charging the jury on intent, the trial court stated, *inter alia*, that

[a] person does not advertise or say beforehand what he intends to do, and so the law says that a person is presumed to intend what he actually does.... [A] person's intention is the natural and reasonable and probable consequences of his acts.

(Trial Transcript ("Tr.") 735.) One of petitioner's attorneys stated a general objection to the charge on intent and proffered a proposed instruction of his own; but neither of his attorneys specified any objection to the language set forth above.[1]

At defense counsel's request, the court also gave a charge on justification. The justification charge as given included the following language:

> You must ... decide whether the testimony introduced by the defendant is truthful and believable. If you believe it, if you are convinced that these acts were done in the manner and for the purpose testified, you must acquit the defendant. If you do not believe them, however, provided still that you are convinced beyond a reasonable doubt that the People have proved that the defendant's acts were intended to harm and complied with all the requirements of murder as I have charged them to you, then you must convict the defendant.

(*Id.* 739–40.) The trial court did not inform the jury that under New York law, once the defense of justification had been raised, the prosecution bore the burden of disproving the defense beyond a reasonable doubt. *See* N.Y. Penal Law § 25.00(1) (McKinney 1975); *People v. Reed*, 40 N.Y.2d 204, 209, 386 N.Y.S.2d 371, 375, 352 N.E.2d 558, 561 (1976). Upon the prosecutor's objection, the court recharged the jury to instruct that the prosecution's burden was to prove that the defendant intended to "kill" the deceased, not merely to "harm" him. Petitioner's attorneys objected to this change but did not express any other objection to the charge on justification. They did not mention the court's failure to inform the

jury of the prosecution's burden of proof on this issue.

The jury found petitioner guilty of second degree murder, and he was sentenced to an indeterminate term of imprisonment of from twenty years to life.

Represented by new counsel, petitioner appealed to the Appellate Division. His new attorney filed a 54-page brief arguing five points: (1) that the evidence was insufficient, (2) that the prosecutor's summation had been unfair, (3) that the trial court should have given a lesser-included-offense charge, (4) that the trial court had failed to give the jury proper instruction on the burden of proof as to the issue of justification, and (5) that the sentence given petitioner was excessive. Counsel did not argue that the language of the trial court's instruction on intent had impermissibly shifted the burden of proof to petitioner. The argument on the justification point was as follows:

> In its charge to the jury, the court informed the jury that if it believed the defendant, it must acquit. (739, 747[.]) However, at no time did the court inform the jury that the People had the burden of disproving the defense of justification beyond a reasonable doubt. *People v. Robinson*, 47 AD 2d 618 [364 N.Y.S.2d 180] (1st Dept., 1975); *People v. Soto*, 38 AD 2d 734 [329 N.Y.S.2d 446] (2d Dept., 1972) [.] It is respectfully submitted that by its instructions to the jury, the trial court improperly placed both the burden of going forward *and* the burden of proof on the defense of justification upon appellant. This being so, it is further submitted that a reversal and new trial is warranted.

---

1. The colloquy as to the court's charge on intent was as follows:

> THE COURT: ... Anything else?
> MR. REGAN [attorney for petitioner]: Just a question of intent.
> THE COURT: Well, I think I covered that intent pretty thoroughly in my charge. I don't know if there is anything I can add to that.
> MR. REGAN: I have a whole printed page.
> MR. MAIOLO [another attorney for petitioner]: Why don't you have it marked for an exhibit?

> THE COURT: Well, everything is on the record.
> MR. REGAN: This is my other charge.
> THE COURT: What's that?
> MR. REGAN: Intent.
> THE COURT: Well, the other one, my charge, is one many other judges use in connection with the charge of intent. I thought it was quite comprehensive.
> MR. REGAN: All right....

(Tr. 745.)

(Petitioner's brief to Appellate Division at 49.) In response, the state did not address this point on its merits. Rather, it argued that since petitioner had neither proposed a justification charge containing a proper statement of the burden of proof nor objected to the charge as given, any objection had been waived.

The Appellate Division affirmed petitioner's conviction without opinion, and the New York Court of Appeals denied leave to appeal.

### B. The First Habeas Petition and the Return to State Court

Petitioner then sought a writ of habeas corpus in the district court, complaining that the trial court's charges on intent and justification impermissibly shifted the burden of proof to him, depriving him of his right to a fair trial. By opinion dated March 17, 1981 ("1981 Opinion"), *United States ex rel. Tsirizotakis v. LeFevre*, 534 F.Supp. 40 (E.D.N.Y.1981), Chief Judge Weinstein dismissed the petition solely because petitioner had failed properly to exhaust his state court remedies on these due process claims. *Id.* at 43–45. The court stated that although the intent language, when viewed in the context of the entire charge and the circumstances of the case, was not prejudicial, *id.* at 42, it considered the claim of error in the justification charge to be "more serious," *id.* The court concluded that the justification charge failed to specify that the state had the burden of proving lack of justification and that had petitioner properly exhausted his state remedies, the district court would have granted the writ. *Id.* at 43. By unpublished order dated September 22, 1981, this Court affirmed the dismissal on the exhaustion ground. 672 F.2d 901.

Petitioner thereafter moved in New York Supreme Court to have his conviction vacated and the indictment dismissed, (1) raising the due process claims of error in the trial court's charge, (2) contending that his trial attorneys, by not objecting to the charge, had failed to provide him with effective assistance, and (3) contending that his appellate attorney, by arguing the

flaws in the charge inadequately, had likewise failed to provide him with effective assistance. The supreme court denied petitioner's motion on the grounds that the challenges to the charge had already been rejected by the appellate division and that the other claims could or should have been presented on the original appeal and hence were waived. The appellate division denied leave to appeal this ruling. Petitioner then filed his present petition for habeas corpus.

### C. The Present Habeas Petition

In his second habeas petition, petitioner renewed his claims that the trial court's instructions on intent and justification improperly shifted the burden of proof to him and that his state trial and appellate counsel failed to provide him with effective assistance of counsel. By opinion dated August 3, 1983 ("1983 Opinion"), Chief Judge Weinstein denied the petition.

The court ruled that, for several reasons, the claimed deficiency in the trial court's charge on intent provided no sound basis for granting the writ. The court found that there was no prejudice to petitioner resulting from the challenged language for two reasons. First, the charge emphasized several times that the burden of proof was on the state to prove petitioner's guilt. Viewed as a whole, the charge was not prejudicial. Second, petitioner had apparently conceded the issue of intent by arguing justification. Thus, any error in the intent language was harmless. Finally, the court noted that petitioner had not properly objected to the intent charge in the state proceedings, and that this procedural default precluded his obtaining habeas corpus relief absent a showing of cause and prejudice pursuant to *Wainwright v. Sykes, supra.* (1983 Opinion at 4–5.)

As to the claimed error in the charge on justification, the court acknowledged that under New York law, the prosecution must disprove justification beyond a reasonable doubt whenever it is raised as a defense (*id.* at 6), and that in its 1981 Opinion it had characterized the trial court's failure to

inform the jury of this burden as a serious defect of constitutional dimension, (*id.* at 5–6). The court noted, however, that since its decision in petitioner's first habeas proceeding, the United States Supreme Court had decided *Engle v. Isaac,* 456 U.S. 107, 122, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982), which made it "uncertain" that this defect was of constitutional magnitude, at least absent a clear indication in state law that the absence of justification was an element of the crime charged. (1983 Opinion at 6–8.) The court found no such clear indication in New York law, and hence concluded that petitioner's argument on the justification charge in the appellate division, which had cited only state cases employing state law analysis, had been insufficient to alert the state court to the federal constitutional nature of the claim. (*Id.* at 7–8.) *See Daye v. Attorney General,* 696 F.2d 186 (2d Cir.1982) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 723, 79 L.Ed.2d 104 (1984). Accordingly, the court concluded that as to the justification charge as well, there had been a procedural default that barred the granting of habeas relief absent a showing of cause and prejudice under *Wainwright v. Sykes.* (1983 Opinion at 8.)

Turning to petitioner's claims of ineffective assistance of counsel, the district court applied the "farce and mockery of justice" standard, then extant in this Circuit for judging claims of ineffective assistance of trial counsel, to petitioner's claims relating to both trial and appellate counsel. The court concluded that under that standard, the attorneys' failure in the state proceedings to raise or elaborate on the issues as to the charge constituted neither the cause required by *Wainwright Sykes* nor an independent constitutional violation sufficient to form a ground for granting habeas

corpus relief. Consequently, the court denied the petition. This appeal followed.[2]

## II. DISCUSSION

On appeal, petitioner contends principally (1) that the allegations of error in the charge present constitutional claims that should be reviewed on their merits and upheld by this Court notwithstanding any procedural default in the state courts; (2) that if he is required to show cause for the procedural defaults, the ineffective assistance of his trial and appellate counsel constitutes such cause; and (3) that the ineffective assistance rendered by his attorneys with respect to these and other matters violated his rights under the Sixth Amendment and provide an independent basis for granting the writ.

We agree with the district court that, to the extent that there were errors in the intent and justification charges, they were not challenged at the appropriate time during the state proceedings, and thus there was procedural default under *Wainwright v. Sykes, supra.* Reviewing petitioner's ineffective assistance of trial counsel claim under the Supreme Court's recent decision in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and his ineffective assistance of appellate counsel claim under the standard established by *Jones v. Barnes,* —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), we also agree with the district court's conclusion that the performances of the attorneys constituted neither cause for the procedural defaults nor independent constitutional violations warranting a grant of habeas corpus relief.

## A. *The Defaults on the Due Process Claims*

It is clear that neither of petitioner's due process claims was timely raised in the

**2.** The district court granted a certificate of probable cause to appeal because it believed that the "farce and mockery" standard should be reexamined by this Court. (1983 Opinion at 11.) Prior to the argument of this appeal, this Court issued its decision in *Trapnell v. United States,* 725 F.2d 149, 153 (2d Cir.1983), which abandoned the "farce and mockery of justice" standard for judging claims of ineffective assistance of trial counsel, in favor of a standard requiring

trial counsel to provide "reasonably competent assistance." The *Trapnell* standard required that "the quality of a defense counsel's representation ... be within the range of competence reasonably expected of attorneys in criminal cases," *id.,* a standard quite similar to that later enunciated by the Supreme Court in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *see* Part II.B.1. *infra.*

state proceedings. As to the intent portion of the charge, there was no objection at trial to the language now under attack. Nor did petitioner challenge this portion of the charge on appeal to the appellate division. Petitioner's silence constituted a procedural default on this issue. *E.g., Taylor v. Harris,* 640 F.2d 1, 2 & n. 3 (2d Cir.) (per curiam), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981); *see Washington v. Harris,* 650 F.2d 447, 452 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982).

Nor was there an objection to the justification charge at trial. Although petitioner challenged this portion of the charge on appeal from his conviction, the state opposed solely by arguing that the point had been waived by petitioner's failure to object in the trial court, and the appellate division affirmed petitioner's conviction without opinion. From these circumstances we must infer that that court rejected petitioner's argument because of his default at the trial level. *Gruttola v. Hammock,* 639 F.2d 922, 929–30 (2d Cir.1981); *see Washington v. Harris, supra.*

*Wainwright v. Sykes* held that the federal courts should not entertain a state prisoner's petition for habeas corpus on a claim not asserted at trial in compliance with state procedural requirements, unless the petitioner shows adequate justification for the noncompliance and actual prejudice resulting from the alleged violation of his rights. 433 U.S. at 84, 97 S.Ct. at 2505. In *Engle v. Isaac, supra,* the Court reaffirmed the cause and prejudice requirements and stated that they must be met even where the claim is of a constitutional nature. 456 U.S. at 129, 102 S.Ct. at 1572. We therefore conclude that the district court correctly required a showing of cause and prejudice with respect to the above defaults before considering the merits of petitioner's present challenges to the charge. Since we conclude for the reasons below that cause was not shown, the court properly declined to grant the writ on the due process claims.

### B. *Cause*

The suggestions of cause advanced by petitioner for his procedural defaults are (1) that his attorneys at trial erred in failing to object (a) to the court's language on intent and (b) to the court's failure to instruct the jury on the burden of proof as to justification; and (2) that his appellate attorney failed (a) to point out the defect in the intent language and (b) to argue adequately the omission on the defense of justification. These contentions require us to evaluate the assistance rendered by petitioners' attorneys under the standards of the Sixth Amendment, since "[w]ithout some showing that counsel's mistakes were so egregious as to amount to a Sixth Amendment violation, a mere allegation of error by counsel is insufficient to establish 'cause' to excuse a procedural default." *Indiviglio v. United States,* 612 F.2d 624, 631 (2d Cir.1979) (footnote omitted), *cert. denied,* 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980). We conclude that under recent Supreme Court authorities petitioner has not shown an ineffectiveness of constitutional dimension, and hence that he has not shown cause for the defaults.

### 1. *Adequacy of Trial Counsel*

■ In *Strickland v. Washington, supra,* the Court established the elements to be proven by a defendant contending that he received inadequate assistance from his trial counsel. The Court began its discussion by pointing out that the Sixth Amendment guarantee of effective assistance of counsel exists in order to protect the criminal defendant's fundamental right to a fair trial. Thus, the court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." —— U.S. at ——, 104 S.Ct. at 2064. To meet this benchmark, a defendant must establish two elements: first, that his counsel made an error that could not be considered within the realm of reasonable

professional competence; and second, that the error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

With respect to the first· element, the Court stated that the defendant must show that counsel's performance was deficient, in the sense that "counsel's representation fell below an objective standard of reasonableness." *Id.* Although the Court declined to set more explicit guidelines, it cautioned that

> a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at ——, 104 S.Ct. at 2065 (quoting *Michel v. New York*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

In discussing the second element, the *Strickland v. Washington* Court stated that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at ——, 104 S.Ct. at 2067. Since the purpose of the Sixth Amendment's guarantee is to ensure that a defendant receives a fair trial, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* While the Court stated that it therefore was "not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," it stated that the test was not one based on outright probability: "we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at ——, 104 S.Ct. at 2068. Rather, the second element established by the Court requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* The Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* In making this assessment, the court "must consider the totality of the evidence before the judge or jury," bearing in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

Within this framework we are unable to conclude that petitioner has demonstrated ineffective assistance of his trial counsel with respect to either portion of the court's charge. If intent had been at issue, the court's intent language, viewed in isolation, could have had the effect of impermissibly shifting the burden of proof to petitioner, *see Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); however, intent was not clearly at issue in the present case. Thus, the trial attorneys' failure to object to the court's language on intent could well have reflected counsel's view that making an issue of intent would only detract from petitioner's primary defense of justification. Since petitioner's theory was that he killed the deceased in order to prevent the deceased from killing him or his companions, he in effect conceded that he intended to shoot the deceased, and to kill him if necessary to prevent his own death. Thus, under *Strickland v. Washington*, the failure of petitioner's trial attorneys to object to the court's language on intent should not be considered error since it may well have been a part of their sound trial strategy.

Further, even if the failure to object was error, we cannot conclude in all of the circumstances of the case that there was any reasonable probability that, absent the challenged intent language, the outcome of the case would have been different. There was a plethora of evidence that petitioner admitted having killed the deceased for reasons other than those constituting justification in the eyes of the law. In addition, the trial court's charge to the jury stated several times that the prosecution bore the

burden of proving petitioner's guilt beyond a reasonable doubt and, specifically, of proving his intent to kill the decedent. Thus, viewing the charge as a whole, *see Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), and in the context of all the evidence presented at trial, we see no likelihood that counsel's failure to object to the court's intent language constituted prejudice to petitioner sufficient to satisfy the requirements of *Strickland v. Washington.*

Trial counsel's failure to ask the court to give proper instruction as to the burden of proof on justification is more troublesome, since we see no basis for viewing this as a matter of strategy. Petitioner's defense centered on his claim of justification, and there is no question that under New York law the prosecution had the burden of disproving this defense. Since that allocation of the burden was advantageous to petitioner and had no apparent disadvantage to him, no reason occurs to us, and the state has advanced none, why petitioner's counsel would omit a request for such a charge as a matter of trial tactics. Even giving the utmost deference to possible trial strategies, therefore, we can only conclude that counsel's failure to request a proper charge on the burden of proof on that issue was an error.

We are not persuaded, however, that petitioner has shown a reasonable probability that the failure to request an explicit charge that the state had the burden of disproving justification affected the outcome of his trial. Although the language of the justification charge was ambiguous in places, the court never stated that the petitioner had the burden. The court had stated at the outset of its charge that "no duty or burden rests on the defendant to

prove his innocence" (Tr. 718), and that the prosecution had the burden of proving the defendant's guilt beyond a reasonable doubt, (*id.*). It reiterated several times during the charge that the burden was on the prosecution, and indeed did so in the course of the justification charge. Thus, although petitioner complains that the court placed the burden on him by stating (twice) that "if you are convinced that these acts were done in the manner and for the purpose [the defendant] testified, you must acquit" (*id.* 739, 747), any adverse effect was immediately ameliorated. In each instance the quoted language was directly followed by the court's reminder that even if the defendant was not believed, the jury could not convict him unless it was "convinced beyond a reasonable doubt that the People have proved that the defendant's acts were intended to [harm] [kill] [3] and complied with all the requirements of murder." (*Id.* 739–40, 747.) [4]

Finally, we view the evidence in the present case as showing overwhelmingly that petitioner had no valid defense of justification. For example, although petitioner claimed that the deceased had been shot while holding his own gun as petitioner was grabbing his arm and face, the undisputed evidence was that the bullet entered the back of the deceased's head, came out through his face, and shattered the car's windshield. The improbability that a bullet from a gun held by the deceased would follow such a path is obvious. Further, the other witnesses who had been in the car at the time of the shooting did not substantiate petitioner's claim that there had been any struggle. Likewise, although petitioner claimed that the struggle began because the deceased had placed his gun to the head of Tsiolis, neither Tsiolis nor any oth-

---

**3.** See text following note 1, *supra.*

**4.** Petitioner also argues that the trial court's charge in effect told the jury that it could consider only petitioner's own testimony in support of his defense of justification and could not consider the testimony of the other passengers that would tend to support that defense. We consider this a strained reading of the charge, one that would not likely have suggested itself

to a listener. In any event, though two of the passenger witnesses testified that petitioner had stated that he killed the decedent before the decedent could kill him, we conclude for the reasons stated in the text following this note that, if petitioner gained any corroboration for his justification defense from the other witnesses, it was minimal.

er witness corroborated this claim. Finally, two of the three passenger witnesses testified to statements by petitioner that were squarely contrary to any lawful defense of justification, and other witnesses similarly described statements by petitioner that he had killed the deceased for reasons entirely unrelated to any alleged struggle to prevent a killing by the deceased.

Given the totality of the evidence, and the repeated admonitions in the charge that the defendant bore no burden of proving his own innocence and that the burden of proving guilt beyond a reasonable doubt was on the prosecution, petitioner has not shown a reasonable probability that the failure of his trial attorneys to object to the justification charge affected the outcome of his trial. Accordingly, we conclude that petitioner has failed to show that this omission deprived him of effective assistance of counsel within the meaning of the Sixth Amendment, and hence to show that the failure of trial counsel constituted cause for the procedural default sufficient to warrant the review of his claims by a federal habeas court.

#### 2. *Adequacy of Appellate Counsel*

██ Our framework for review of the claim of ineffective assistance of appellate counsel is the teaching of the Supreme Court in *Jones v. Barnes, supra.* There the Court ruled that we are not to "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. — U.S. —, 103 S.Ct. at 3313–14. Using this standard, we cannot conclude that the performance of petitioner's appellate counsel constituted cause for any procedural default.

The brief of petitioner's appellate counsel to the appellate division was a 54-page argument of the five points counsel apparently deemed most likely to succeed. Counsel did not seek reversal on the basis of the court's charge on intent. In view of our discussion above, the omission of this point is unsurprising since that error could hardly have been deemed prejudicial in light of all the circumstances.

Counsel did argue for a reversal based on the court's failure to instruct properly on the burden of proof as to justification, and although petitioner faults counsel for having devoted only one page to this point, counsel's preference to stress other arguments not waived below hardly seems unreasonable. We note that the justification argument was not made on constitutional grounds and that had such grounds been specified, it is possible that the appellate division, in its discretion, might have reached the merits of the claim notwithstanding the absence of any objection at trial. *See, e.g., Ulster County Court v. Allen,* 442 U.S. 140, 150 n. 8, 151 n. 10, 99 S.Ct. 2213, 2221 n. 8 & n. 10, 60 L.Ed.2d 777 (1979). Nonetheless, given the uncertainty of the constitutional dimension of the claim, *see Engle v. Isaac, supra,* 456 U.S. at 122, 102 S.Ct. at 1568, and the procedural default at trial, counsel's assessment of how much to highlight this argument is the type of judgment that, under *Jones v. Barnes,* we are not entitled to second-guess.

#### C. *Ineffective Assistance of Counsel as an Independent Basis for Granting the Writ*

In addition to his contentions that the above omissions of his attorneys with respect to the instructions on intent and justification deprived him of effective assistance of counsel, petitioner contends that there were other failings as well. We have considered all of petitioner's arguments, both independently and in combination, and we find them without merit.

#### CONCLUSION

The judgment of the district court denying the petition for habeas corpus is affirmed.