**Rodney COX, Petitioner–Appellee,**

v.

**Edward R. DONNELLY, Superintendent, Wende Correctional Facility; and Eliot Spitzer, New York State Attorney General, Respondents–Appellants.**

**Docket No. 03–2440.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 2004.

Decided Oct. 22, 2004.

Sharon Y. Brodt, Assistant District Attorney, Kew Gardens, N.Y. (Richard A. Brown, District Attorney, Queens County, and John M. Castellano, Assistant District Attorney, of counsel), for Respondents–Appellants.

Richard Joselson, New York, N.Y. (The Legal Aid Society, Criminal Appeals Bureau, of counsel), for Petitioner–Appellee.

Before OAKES, KEARSE and CABRANES, Circuit Judges.

OAKES, Circuit Judge:

Rodney Cox seeks habeas relief on the grounds that he received ineffective assistance of counsel, leading to his conviction and incarceration for second-degree murder. Cox argues that counsel's failure to object to an erroneous jury instruction on intent prejudiced the outcome of his trial. The United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge,* granted Cox's habeas petition, finding that Cox's Sixth Amendment right to effective counsel was violated when his trial counsel made no objections to an unconstitutional jury instruction that relieved the state of its burden of proof on intent to kill. We agree with the district court that counsel's performance was deficient and prejudicial, and find that the state courts acted unreasonably in denying Cox's appeal. However, Cox's trial counsel was not given a hearing in the district court to explain his conduct as required by *Sparman v. Edwards,* 154 F.3d 51, 52 (2d Cir.1998). Accordingly, we vacate the grant of a writ of habeas corpus and remand to the district court for a *Sparman* hearing.

## BACKGROUND

In October 1993, Cox was visiting Tanisha Brewster in her apartment when her boyfriend, Eric Copeland, came to the door. Brewster refused to open the door and Copeland, who was a large man, kicked it in. When Copeland saw Cox in Brewster's living room, he told Cox to leave. After an altercation between the men, Cox left the apartment.

Later that day, Cox called Brewster and asked to come to her apartment to retrieve the Walkman he had left behind. Brewster agreed and Cox went to the apartment, where Brewster was alone with her one-year-old son. Shortly after Cox arrived, Brewster's friend Paschell Petty rang the doorbell. Brewster opened the door for Petty, at which point Copeland, who had been hiding around the corner, came toward the door asking who was inside the apartment. Although Brewster tried to keep Copeland from entering, he angrily pushed her aside and went in.

Scared by Copeland's anger, Petty went down the hall to Brewster's bedroom to get Brewster's son. Cox was in the bedroom loading a gun. Petty went into the room and closed the door. Meanwhile, Brewster and Copeland went into the adjoining bedroom where they argued and shouted for a few minutes. Despite Brewster's efforts to restrain Copeland, he eventually went into her bedroom and found Cox, who was still holding the gun.

Copeland and Cox began talking, then started arguing loudly and angrily for about fifteen minutes. The bedroom was very small, with Cox in one corner, Copeland in the other, and the two women with the child standing in the middle. Finally, Copeland said, "What are you going to do, shoot me?" In response, Cox fired one shot into Copeland's face, killing him.

Cox was charged principally with two counts of murder in the second degree, to wit, one count of intentional murder and one count of murder by depraved indifference. In conference with the trial judge, after all the evidence had been presented, defense counsel moved to dismiss the depraved indifference murder count charged in the indictment. The court denied this request, announcing it would submit both the depraved indifference murder count and the intentional murder count to the jury. Defense counsel also asked that the jurors be instructed on the defense of jus-

tification, which the trial court refused. For its part, the state requested that the jury be charged with the lesser included crime of first-degree manslaughter. Defense counsel objected to any lesser included charges being submitted to the jury and the trial court denied the state's requested charge.

When the trial judge charged the jury, he issued a charge on intentional second-degree murder instructing that "the law states that a person intends the natural consequences of his acts." Although the court solicited objections from the parties after delivery of the charge, defense counsel did not object. The charge was later repeated twice during the jury deliberations, once in response to a note from the jury requesting "the legal definition of intent to kill." Again, though provided an opportunity to object, defense counsel did not do so. After deliberating into a second day, the jury declared itself deadlocked and was directed by the court to continue deliberations. The jury finally reached a verdict of guilty of intentional murder and not guilty of depraved indifference murder.

Cox appealed his conviction to the state appellate court, arguing, among other things, that the judge had erred in not instructing the jury on justification and that he had received ineffective assistance of counsel when counsel failed to object to the trial judge's intent charge. The court affirmed Cox's conviction without discussing the ineffective assistance claim. *See People v. Cox*, 245 A.D.2d 462, 666 N.Y.S.2d 463, 464 (2d Dept.1997). Cox then appealed to the New York Court of Appeals, reiterating his arguments on justification and ineffective assistance. The Court of Appeals, in affirming the conviction, addressed the justification argument at length and dismissed the ineffectiveness argument as "without merit." *People v.*

*Cox*, 92 N.Y.2d 1002, 1005, 684 N.Y.S.2d 473, 475, 707 N.E.2d 428 (1998).

In December 1999, Cox filed a petition for a writ of habeas corpus in federal court. His petition raised the single claim that his counsel had been ineffective for failing to object to the trial judge's intent charge. Cox argued that the language used in the charge, that "a person intends the natural consequences of his acts," violated the Supreme Court's holding in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), that such language unconstitutionally shifts the burden of proof onto a defendant. *Id.* at 521, 99 S.Ct. 2450. On June 24, 2003, the district court granted Cox's petition, concluding that counsel's failure to object to an unconstitutional instruction could not be deemed strategic and had prejudiced the outcome of Cox's trial. *See Cox v. Donnelly*, 267 F.Supp.2d 418 (E.D.N.Y.2003). This appeal followed.

### DISCUSSION

When considering on appeal a district court's grant of a habeas petition, we review *de novo* the court's legal conclusions and review its factual findings for clear error. *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir.2003). In this case, the district court's opinion focused on the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as applied to the circumstances of Cox's trial. The parties do not dispute any factual findings in the record. We therefore limit our review to a fresh consideration of whether *Strickland*'s standard was met in this case.

Additionally, as with all habeas petitions brought after the effective date of the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court cannot grant habeas in a case in

which there was an adjudication on the merits in a state court proceeding unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2003); *see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Although the state courts in this case did not give a full analysis of the ineffectiveness claim before us, we still treat the claim for AEDPA purposes as one that was "adjudicated on the merits." *See Sellan v. Kuhlman,* 261 F.3d 303, 311–13 (2d Cir.2001). Our review therefore must also focus on whether the state courts' denial of Cox's appeal rested upon an unreasonable application of *Strickland,* which is the relevant clearly established federal law. *See Aparicio v. Artuz,* 269 F.3d 78, 94–95 (2d Cir.2001). We are guided by the Supreme Court's decision in *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), in which the Court stated that a habeas petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 698–99, 104 S.Ct. 2052.

■ The test for ineffective assistance of counsel established in *Strickland* requires a defendant to show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 688, 694, 104 S.Ct. 2052. To determine that the state court applied *Strickland* in an unreasonable manner, we cannot simply conclude that the court's application was erroneous; rather, we must find that there was "[s]ome increment of incorrectness beyond error." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (rejecting conclusion that "objectively unreasonable" means "clear error" and warning that conflation of unreasonableness with error "fails to give proper deference to state courts").

Neither the Appellate Division nor the New York Court of Appeals addressed Cox's ineffectiveness argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether *Strickland* was applied unreasonably. *See Aeid v. Bennett,* 296 F.3d 58, 62 (2d Cir.2002) (when "state courts summarily rejected [habeas petitioner's] ineffective assistance of counsel claim without explanation, we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning"); *Eze v. Senkowski,* 321 F.3d 110, 125 (2d Cir.2003) (when state court failed to articulate its reasoning for denying ineffective assistance of counsel claim, federal habeas court engaged in review of counsel's performance at trial).

The claim made by Cox is straightforward: that in giving its intent to kill instruction, the trial court clearly violated *Sandstrom,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, and counsel inexcusably and prejudicially failed to object to the unconstitutional instruction. The state concedes that the instruction was erroneous, but

argues that counsel's failure to object was part of an overall trial strategy of presenting a justification defense. We agree with Cox.

■ There can be no doubt that the trial court's instruction on intent contravened the longstanding holding of *Sandstrom*. In that case, the Supreme Court rejected an intent instruction stating "the law presumes that a person intends the ordinary consequences of his voluntary acts" because it violated the Fourteenth Amendment's requirement that every element of an offense be proved beyond a reasonable doubt. 442 U.S. at 517, 520–21, 99 S.Ct. 2450. The Court concluded that such an instruction "reliev[ed] the State of the burden of proof ... on the critical question of petitioner's state of mind." *Id.* at 521, 99 S.Ct. 2450; *see also United States v. Nelson*, 277 F.3d 164, 197 (2d Cir.2002) (explaining that "it is ... well established that ... a jury instruction in a criminal case that the law *presumes* that a person intends the ordinary consequences of his voluntary acts violates due process" (emphasis in original)). New York courts have long applied the holding of *Sandstrom* as a matter of state law. *See People v. Thomas*, 50 N.Y.2d 467, 472–73, 429 N.Y.S.2d 584, 587, 407 N.E.2d 430 (1980) (noting that "the charge condemned in *Sandstrom* has been held by this court [ ] to be erroneous" for more than a century).

The inquiry we are faced with, then, is whether Cox's trial counsel provided ineffective assistance to him by failing to object to the constitutionally defective intent instruction on any of the three occasions it was issued. In order for us to conclude that he did, we must determine both that counsel's conduct was objectively unreasonable and that the outcome of Cox's trial would likely have been different had the objection been made. *See Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir.2001);

*Lindstadt v. Keane*, 239 F.3d 191, 198–99 (2d Cir.2001).

■ In considering the reasonableness of counsel's failure to object, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "Judicial scrutiny of a counsel's performance must be highly deferential .... [and] every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* We also apply the presumption that counsel's conduct "might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). We have noted that a strategic decision is a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." *Pavel*, 261 F.3d at 218.

The state argues that Cox's counsel made the strategic choice not to argue intent and was instead fully committed to the defense that intentional, deadly force was necessary in order to stop Copeland. The state contends that counsel's multiple failures to object to the erroneous intent charge were consistent with this overall strategy. In support of this argument, the state points to our decision in *Tsirizotakis v. LeFevre*, 736 F.2d 57 (2d Cir.1984), where we examined virtually the same constitutionally defective intent instruction as was given here and affirmed the denial of a habeas petition on the ground that counsel's failure to object to the instruction could have been strategic. *Id.* at 63. We based our holding on the fact that "intent was not clearly at issue in the [ ] case. Thus, the trial attorneys' failure to object to the court's language on intent could well have reflected counsel's view that making an issue of intent would only detract from petitioner's primary defense of justification." *Id.*

There is a significant difference, however, between *Tsirizotakis* and this case: here, intent was not only at issue, it was the *sole* issue on which Cox's conviction depended at the time the defective instruction was given. Despite the state's argument that counsel conceded intent, it does not point to any record evidence of an intent concession by Cox's counsel. Indeed, there appears to be none. It is well established that the mere assertion of justification or self-defense does not concede intent, *see Harris v. Scully*, 779 F.2d 875, 879–80 (2d Cir.1985), and, as the district court recognized, the jury could have found on the facts that Cox intended "merely to wound or even to frighten a feared aggressor" rather than kill him. *Cox*, 267 F.Supp.2d at 424. We therefore cannot accept the state's argument that counsel abandoned the issue of Cox's intent as a tactical maneuver.

Moreover, the three erroneous charges on intent came *after* the trial judge had refused to instruct the jury on a justification defense. Whatever his prior strategy may have been, counsel had to be aware at that point that justification was no longer an option, leaving intent the only issue for the jury to decide. The fact that two of the defective charges came in direct response to the jury's questions further underscores the importance intent had assumed at the time deliberations occurred. *See People v. Ciaccio*, 47 N.Y.2d 431, 436, 418 N.Y.S.2d 371, 373, 391 N.E.2d 1347 (1979) (recognizing that instructions given during jury deliberations "may well be determinative of the outcome of the case,

coming as they do in response to questions raised by the jurors themselves").

Under such circumstances, we cannot characterize counsel's failure to object to any of the three unconstitutional intent instructions as "reasonable." We find implausible the state's suggestion that counsel's silence was a deliberate tactic; counsel's inaction in the face of the defective intent charges, even as the jury indicated the importance of intent in its deliberations, cannot be deemed a "conscious, reasonably informed decision" made "with an eye to benefitting" Cox. *Pavel*, 261 F.3d at 218. Instead, on the evidence in the record before us and in the absence of any reasonable explanation by Cox's counsel for his actions, we must conclude that his failure to object to the unconstitutional instruction led to representation that fell below the prevailing norms of the legal profession and that his performance was objectively unreasonable.

In order to meet the second prong of the *Strickland* test, Cox must show that his counsel's unreasonable conduct prejudiced the outcome of his trial, such that our confidence in the outcome is undermined. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "The level of prejudice [Cox] need demonstrate lies between prejudice that had 'some conceivable effect' and prejudice 'that more likely than not altered the outcome in the case.'" *Lindstadt*, 239 F.3d at 204 (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052).[1]

We find that standard has been met here. In addition to hearing the original defective charge, the jury made two requests for supplemental instruction on in-

---

**1.** If Cox demonstrates this level of prejudice as a result of his attorney's failure to object to the jury charge, he will also demonstrate that the state court's *Sandstrom* error was not harmless, regardless of the standard used to measure harmlessness on collateral review. *Cf. Cotto v. Herbert*, 331 F.3d 217, 253 (2d Cir.2003) (declining to decide whether, in the absence of a state court ruling that commands AEDPA deference, a constitutional error must be "harmless beyond a reasonable doubt" or if an error is harmless if it does not have a "substantial and injurious effect in determining the jury's verdict").

tent and, on both occasions, the defective charge was given again without objection from counsel. First, the jurors asked for re-instruction on the elements of the crime charged; later, they specifically requested "the legal definition of intent to kill." *See Cox,* 267 F.Supp.2d at 420. Thereafter, the jury announced that it was deadlocked, and returned a guilty verdict only after being instructed to continue deliberations pursuant to *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). This chronology attests to the significance of the intent issue in the jury's deliberations, and establishes the magnitude of the error counsel made in failing to object to the erroneous charge. *See Mason v. Scully,* 16 F.3d 38, 45 (1994) (finding *Strickland* prejudice on habeas review when jury first asked for rereading of improper testimony and then declared itself deadlocked, reaching a verdict only after receiving an *Allen* charge).

The evidence of Cox's intent to kill Copeland was not, as the state characterizes it, "overwhelming." Cox did not seek out a confrontation with Copeland, he hid when Copeland charged into Brewster's apartment, and he did not immediately fire on Copeland when Copeland came into the bedroom where Cox was hiding. Additionally, Cox fired only one shot at Copeland before fleeing the scene. The state's decision to charge Cox with depraved indifference murder, and to argue before summations that this charge should be submitted to the jury, indicates its awareness of the possibility that Cox lacked the intent to kill Copeland. In fact, the prosecutor acknowledged in his summation that "at the very least, [Cox] intended to cause Eric Copeland serious physical injury." In the absence of overwhelming proof of intent to kill, and in light of the fact that a justification defense was not considered by the jury, it is more likely than not that the trial court's intent instruction had the ef-

fect of directing a verdict against Cox. *Cf. Lancaster v. Newsome,* 880 F.2d 362, 369 n. 7 (11th Cir.1989) (stating that in case where intent "was plainly at issue . . ., and was not overwhelmingly proved by the evidence, the court could not find the erroneous instruction on intent to be harmless").

The conclusion that counsel's inaction substantially prejudiced Cox's rights and impacted the outcome of his trial is, we think, an unavoidable one. The jury in this case seemed headed for a deadlock until, after receiving the erroneous intent charge for the third time, it returned a verdict of guilty of intentional murder and not guilty of depraved indifference murder. We therefore find that but for counsel's deficient performance, the likely outcome of Cox's trial would have been different. Counsel's failure to protect Cox's rights was of sufficient magnitude to undermine our confidence in the outcome of the trial proceedings.

Although we have found that Cox likely meets both prongs of the *Strickland* test, his habeas petition can only be granted if the state courts' decision that he did not receive ineffective assistance of counsel represents an "unreasonable," not simply incorrect or erroneous, application of federal law. *See Williams,* 529 U.S. at 412, 120 S.Ct. 1495. In evaluating whether this criterion is met, we must determine that the decision "reflect[s] some additional increment of incorrectness such that it may be said to be unreasonable." *Aparicio,* 269 F.3d at 94. Where counsel, for no strategic reason, repeatedly fails to object to a clearly unconstitutional charge on the key issue in a criminal case, the rejection of an ineffectiveness claim on that basis simply cannot be viewed as reasonable. In light of the nature and repetition of the defective intent charge, counsel's repeated failure to object to it, the jury's focus and uncertainty on the very issue that the

charge addressed, and the inconclusive nature of the state's case on intent to kill, we hold that the state courts' rejection of Cox's ineffective assistance of counsel claim was likely not only incorrect, but objectively unreasonable as well.

In sum, we hold that Cox has likely shown that the performance of his appellate counsel was objectively unreasonable and prejudiced his appeal in satisfaction of the *Strickland* test, and that the state courts' denial of Cox's appeal "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

█ Typically, a grant of habeas corpus would follow from this holding. Here, however, we find no evidence in the record that the district court afforded Cox's trial counsel an opportunity to explain his deficient performance as required by *Sparman v. Edwards. See* 154 F.3d at 52. We concede that it is unlikely that counsel will be able to offer an explanation to defeat the conclusion that his performance was a result of ignorance, inattention or ineptitude. Nevertheless, "our cases require that 'except in highly unusual circumstances,'" the assertedly ineffective counsel should be afforded "an opportunity to present evidence, in the form of live testimony, affidavits, or briefs." *Bloomer v. United States,* 162 F.3d 187, 194 (2d Cir. 1998) (quoting *Sparman,* 154 F.3d at 52); *see also Eze,* 321 F.3d at 112–13 (vacating denial of habeas and remanding to the district court so impugned attorney could have an opportunity to explain seemingly incompetent performance). Because "highly unusual circumstances" are not present in Cox's case, we remand the case to district court with instructions to give Cox's counsel an opportunity to be heard pursuant to *Sparman.*

## CONCLUSION

In light of the foregoing, we vacate the decision of the district court and remand for further proceedings.